[S. F. No. 868.   Department Two.—February 10, 1899.]

MARTHA FOSTER BLAKE, Respondent, v. NATIONAL LIFE INSURANCE COMPANY, Appellant.

LIFE INSURANCE—FORFEITURE—NONPAYMENT OF PREMIUM—WAIVER— AGENCY—VERDICT—NEW TRIAL—SPECIFICATIONS.—In an action upon a life insurance policy which stipulated that failure to pay any premium or part thereof, or any note given therefor when due, should cancel the insurance and contract, and that agents could not give credit or waive forfeiture, where the complaint alleged in one count compliance with all the conditions, and also in another count admitted a failure to pay the annual premium immediately preceding the death, and averred that the condition was waived and a credit given, and the answer pleaded that the

policy was forfeited for the nonpayment of that premium, a general verdict for the plaintiff involved a finding that the condition was waived by the corporation, but involved no finding in regard to the agent; and specifications of insufficiency of the evidence to sustain probative facts in regard to waiver or credit given by the agent, are sufficient; and where there is no evidence to sustain any waiver of nonpayment, or credit given, an order refusing a new trial must be reversed.

ID.—REINSTATEMENT UPON CONDITION OF PAYMENT AND HEALTH CERTIFI- CATE—NONCOMPLIANCE WITH CONDITIONS.—A customary practice by the company to allow a reinstatement of a lapsed policy within a reasonable time upon condition of procuring a health certificate and paying the premium, can be regarded only as a contract to renew upon compliance with the conditions, and where the insured died without having paid the premium, and without having furnished a health certificate, and without any agreement to extend a credit, no recovery can be had of the amount of the policy.

ID.—STIPULATION FOR PAID-UP POLICY—OPTION FOR EXTENDED INSURANCE. Where the policy stipulated that, upon failure to pay an annual premium, the company guaranteed, without any action on the part of the insured, a paid-up policy in a specified sum, and also gave the insured the option upon application within two months to give extended insurance for the full amount of the policy for a specified time, it seems that the policy was transferred into a paid-up policy for the specified sum, no option having been exercised to continue the whole policy in force for the specified period.

APPEAL from an order of the Superior Court of the City and County of San Francisco, denying a new trial.  A. A. Sanderson, Judge.

The facts are stated in the opinion of the court.

Metcalf & Metcalf, and Myrick & Deering, for Appellant.

Rodgers & Paterson, for Respondent.

TEMPLE, J.—The defendant appeals from an order refusing a new trial.

The action was upon a policy of life insurance issued by defendant December 26, 1889. The defense was that the policy had been forfeited for the nonpayment of premium which fell due December 26, 1893. It was stipulated in the policy that failure to pay any premium, or any part thereof, or any note given therefor when due, should cancel the insurance and con-

tract, and that agents were not authorized to receive premiums after the day when they were payable, and could not give credit or waive forfeiture.

The complaint contains two counts or causes of action. In the first full performance of all conditions on the part of the insured is alleged. In the second it is admitted that there was a failure to pay the annual premium which became due December 26, 1893, and it is averred that the condition was waived 'and credit was given to the insured.

A preliminary objection is made on the part of respondent that in defendant's motion for a new trial there is "no sufficient specification of the particulars in which the evidence is alleged to be insufficient." The trial was by jury, which rendered a general verdict for plaintiff. It is said the jury must have found that defendant waived the payment and extended the time. This, it is contended, involved two propositions: authority on the part of the agent to waive the conditions, and the fact of waiver. But the verdict involved no finding in regard to the agent, but simply that the condition was waived by the corporation. The facts in regard to the agent are merely probative, showing through what means the defendant made the alleged waiver. The specifications are sufficient.

There was no conflicting evidence in the case, the only witnesses being the agent and employees of the defendant. They testified very emphatically that the annual premium due on the twenty-sixth day of December, 1890, was not paid, and payment was not waived.

Respondent contends, however, that credit had been given to the insured, and the contention is based mainly upon these facts: Dr. Blake was medical examiner for defendant. His fee was five dollars for each certificate and was paid by the corporation. He was not paid in cash in each case, but received credit on the books kept by the agent at San Francisco. He had taken out two insurance policies, on each of which the annual premium was three hundred and sixty-five dollars. It seems that he never did, during the existence of his insurance, pay at one time the amount of his annual premiums. The agent had been in the habit of taking his notes for some portion and crediting him with cash payments. The notes were paid

partly in cash and partly by the amounts due Dr. Blake from the corporation. On two occasions the corporation itself had taken his notes for a portion of the premiums due. On the day before the premium fell due Dr. Blake called upon the agent and proposed to give the "premium note," as he called it. The agent told him positively that the company would not take his note, and he—the agent—could not carry him.

On the 29th of the month, which was the last day before the report of delinquents was sent to the home office, the doctor said he could not pay but would have to let the report go, and he would fix it up as soon as possible. On the very day of his death, which occurred on the 17th of the succeeding month, Dr. Blake again called upon the agent and endeavored to arrange the matter, and was again told that no credit would be given.

Although the policy was in terms forfeited by failure to pay the annual premium on the very day on which it fell due, the practice of the company was, if the insured paid up within a reasonable time and produced a new health certificate, to reinstate the insurance. And it seems that the agent was directed in his report to mark some as canceled and others as simply being in arrears. In explanation of this the agent said: "Dr. Blake was transferred and reported by us to the company on the arrearage sheet. Others were put on the cancellation sheet and so reported to the company. We transfer premiums to the arrearage sheet when they are not paid and we make our report, and we think we can collect them by holding them to our next report, the parties giving a health certificate. If an account is transferred to that sheet before a person can be reinstated and the premium be accepted, he will have to give a health certificate."

The company was in the habit of sending to the agents "renewals," in case the premiums were paid before the next monthly report. The insured died without having paid the premium and without having furnished a new health certificate.

There was clearly no agreement to extend the credit of Dr. Blake. The report was a private communication between the agent and his principal; if it could be considered an agreement with Dr. Blake, it could only be a contract to renew if he complied with the conditions. This he did not do.

The policy contained a stipulation that although failure to pay an annual premium when due would cancel a policy, still, after three full annual payments have been paid the company guarantees: "1. Without any action on the part of the insured, a paid-up policy for one thousand and eighty dollars; 2. Upon surrender of his policy within two months a cash value of five hundred and thirty dollars and twenty cents; 3. Upon application within two months, to give extended insurance for the full amount of this policy for three years, two hundred and fifty-eight days."

Necessarily these were alternative propositions. Dr. Blake took neither, as, no doubt, his fixed intention was to have his policy renewed.

It might be plausibly argued that upon his failure to pay the policy was at once transferred into a paid-up policy for one thousand and eighty dollars; but I see no plausibility whatever in the contention that until Dr. Blake exercised his option the policy remained in force for the full amount.

The order appealed from is reversed and the cause remanded for a new trial.

Henshaw, J., and McFarland, J., concurred.

Hearing in Bank denied.