## NIELSEN v. PROVIDENT SAVINGS LIFE ASSURANCE SOCIETY OF NEW YORK.*

### S. F. No. 1915; November 8, 1901.

#### 66 Pac. 663.

**Life Insurance—Waiver of Forfeiture.—A Life Insurance Policy Provided for an Annual Renewal,** without medical re-examination, upon payment of a certain premium on a certain day, and that failure to pay such premium on the day specified should terminate the policy; but it was the custom of the company to reinstate policies upon the insured's paying the premium and furnishing a health certificate within thirty days from such lapse. The insured failed to pay the third annual premium, but within thirty days sent a money order

*For subsequent opinion in bank, see 139 Cal. 332, 96 Am. St. Rep. 146, 73 Pac. 168.

to the company, but without the health certificate. Notices of this premium had been accompanied by a blank health certificate, and requests for its execution in connection with the remittance. The company receipted for the money order, expressly stating that they could not accept it as payment unless the health certificates were sent within thirty days. Insured died without sending the certificate, and the money order was returned. Held, that, the policy having lapsed and the health certificate being a prerequisite to its reinstatement, the evidence was not sufficient to show a waiver of the forfeiture on the part of the company.

**Life Insurance—Notice That Premium is Due.—A Notice, in Writing**, stating the number of the policy, amount of premium, place at which and person to whom it was payable, and which was inclosed in a securely closed envelope, addressed to the insured at his residence in California, and deposited, postage prepaid, in the postoffice in New York, thirty days prior to the day on which the premium fell due, was a sufficient notice, under the laws of New York, requiring notice of insurance premiums to be given at least fifteen, and not more than forty-five, days before such premiums become due.

**Life Insurance—Nonpayment of Premium—Application of Reserve.**—Under the New York statute, providing that, when an insurance policy has lapsed for nonpayment of premiums, the net reserve on such policy shall, on demand made, with surrender of the policy within six months after such lapse, be taken as a single premium, etc., and shall be applied "as shall have been agreed in the application and policy, either to continue the insurance of the policy in force at its full amount so long as such single premium will purchase temporary insurance for that amount, or to purchase upon the same life" paid-up insurance, a policy on which two annual premiums have been paid, providing that its reserve fund shall be "used toward offsetting any increase in the premiums" on such policy, is not self-perpetuating after nonpayment of premiums, although its reserve fund is more than sufficient to buy temporary insurance up to the death of the insured, since the statute requires an election to be made by the insured, and the policy makes no provision for the application of such reserve to continued insurance.

**Life Insurance—Reserve.—An Instruction Submitting to the Jury**, as a question of fact, the inquiry whether "there was a reserve on the policy" of a certain amount "calculated as provided in said statute," the substance of the statute having been given them, was error, since it is not within the province of the jury to determine a question depending upon purely mathematical calculation and the construction of a statute.

APPEAL from Superior Court, City and County of San Francisco; George H. Bahrs, Judge.

Action by Mathilda Nielsen against the Provident Savings Life Assurance Society of New York. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Lloyd & Wood for appellant; Van Ness & Redman for respondent.

COOPER, C.—Action to recover $2,500 upon a policy of life insurance. The case was tried with a jury, and verdict rendered for plaintiff for the amount claimed. Judgment was accordingly entered, and from the judgment and order denying a new trial the defendant appeals.

On January 21, 1893, the defendant, in consideration of a premium of $43.70, issued its policy of insurance by which it promised to pay Mathilda Nielsen, wife of John Nielsen, $2,500 within sixty days after proof of the death of John Nielsen, provided such death should occur on or before the twenty-first day of January, 1894. The policy contained the following clauses and conditions: "And the said society further agrees to renew and extend this insurance upon like conditions, without medical re-examination, during each successive year of the life of the insured from date hereof, upon the payment, on or before the twenty-first day of January in each such year, of the renewal premiums, in accordance with the schedule rates, less the dividends awarded hereon." "Failure to pay any premium or semi-annual or quarterly installment thereof when due will thereupon terminate this policy." "After deducting the expense charge, which is limited to four dollars per annum on each thousand dollars insured, the society agrees to divide the residue of each renewal premium received by it upon this policy as follows: Such amount as shall be required for this policy's share of death losses will be appropriated as a death fund, to be used solely in settlement of death claims. The remainder thereof will be retained as a guaranty fund. The amounts so retained on account of this policy will be used towards offsetting any increase in the premium on this policy from year to year; or, provided this policy, after five full years' premiums have been paid, be terminated solely by nonpayment of any stipulated premium when due, eighty per cent of any amount so retained, but not so used, will be applied to extend this insurance, or, if application be made

therefor while this policy is in full force and effect, to purchase paid-up insurance.'' The policy was continued in force by the payment of the premiums when due until January 21, 1896, at which time the premium, although due, was not paid. John Nielsen died February 19, 1896. The complaint contains three counts upon which plaintiff relies. In the first, the payment of the premiums in due time, and the full performance of the contract on the part of deceased during his lifetime, are alleged; in the second, the failure of the defendant to give the notice required by the laws of New York of the time when the premium would be due; in the third, that the policy carried a reserve in amount sufficient to protect it from forfeiture between the date when the premiums became due and the death of Nielsen.

We do not think there is sufficient evidence to sustain the verdict as to either count. As to the first, it is not claimed, and there is no evidence tending to show, that the premium was paid on or before the twenty-first day of January, 1896. It is therefore evident that the policy became void after January 21, 1896, unless it is shown that defendant waived the payment by accepting the premium, or in some other manner, and it is claimed that such waiver is shown by the evidence. It appears that it was the custom or rule of this company—as in fact it is of most insurance companies—to reinstate the insured within thirty days after the policy has become forfeited upon application of the insured, payment of the premium, and a health certificate properly signed as required by the rules of the company. On January 25, 1896, the manager of defendant wrote to deceased, informing him that his premium, $22.73, was due January 21st, and asking him to remit the amount, with the health certificate properly signed. In this letter deceased was urged to remit the amount at once and sign and return the health certificate, a copy of which was inclosed in the letter. In answer to the above letter, deceased wrote on January 27th acknowledging the receipt, and stating that he would remit the amount in a few days. On February 4th, plaintiff wrote to defendant asking about the payment of the premium, stating that she wanted to attend to it if her husband had not done so, as he was very careless. This letter was promptly answered by defendant's manager February 5th, in which the amount of the premium was stated, $22.73, that it was due January 21st,

and had not been paid. In this letter the following language was used:

"According to the conditions of the contract, he has thirty days after due date in which to pay, provided he can sign a health certificate, a blank of which we inclose. In remitting the premium, kindly return this health certificate, signed by your husband, and having it witnessed.

"Yours, very truly,

"G. C. PRATT, Manager.

"Send postoffice order."

Not having received the premium nor the health certificate, the defendant's manager again wrote to plaintiff on February 14th, and in this letter said: "The premium on your husband's policy, No. 50,386, of $22.73, was due January 21st, and has not been paid, and if not paid before the 21st inst. we cannot receive it. We have already sent you health certificate, and trust you will give this your immediate attention." On February 17th deceased sent a Wells-Fargo money order for $22.75, inclosed in a letter, but did not send the health certificate. The manager of defendant thereupon, on February 18th, again wrote to deceased, acknowledging the receipt of the money order, and in the letter said: "Before we can send you the regular receipt, it will be necessary for you to sign and return the inclosed health certificate, having it witnessed. Where a premium is overdue, the company always requires this blank to be filled out before the premium can be accepted." In this letter another blank health certificate was inclosed. To this letter no reply was received and no health certificate ever sent to defendant. On February 19th John Nielsen died, and after hearing of his death the $22.75 was returned. At the time he died the money order had not been cashed, nor had it been at the time of the trial.

We do not think the above evidence sufficient to show any waiver by defendant. It had stated over and over again the conditions upon which the insured could be reinstated. The premium must have been paid and a health certificate sent to defendant within the thirty days. The deceased had been notified before the premium was due and had failed to pay. The policy was thereupon, according to its terms, dead, but defendant allowed the usual thirty days' grace, and urged deceased to avail himself of it by complying with the rule as

to payment and furnishing a health certificate. The money for the payment was finally sent, but no health certificate. We have no power to say that the health certificate could be dispensed with. It certainly is a reasonable and fair rule to allow the insured thirty days after having forfeited his policy in which to reinstate himself by paying up and showing that his health is good at the time he applies to be reinstated. It may be that in this case no such certificate could have been furnished, but, be that as it may, we hold that it was necessary for the deceased under the circumstances to have furnished the certificate. The facts herein narrated and in this record show no waiver. If the health certificate had been furnished, and the premium received by the company, within the thirty days, the forfeiture would have been waived. But in this case the premium was not accepted by the company. True, it was sent, but immediately the defendant wrote insisting upon the health certificate. It never by word or act showed any intention to reinstate deceased, without the health certificate. To hold that the mere receipt of the money order, under the circumstances, was a waiver, would be an innovation in the established rules of law applicable to insurance.

In regard to the second count, it is claimed that under the laws of New York the deceased should have been notified at least fifteen, and not more than forty-five, days before the premium became payable. Defendant proved by the witness Milair that on December 20, 1895, he prepared a notice in writing, stating the number of the policy, the amount of the premium, the place where it should be paid, and the person to whom it was payable; that said notice was addressed to John Nielsen, at St Helena; that "said notice was inclosed in a securely closed envelope, and the postage thereon was paid by the corporation, the Provident Savings Life Assurance Society, and such notice, so addressed and inclosed in such envelope, the postage prepaid thereon, was deposited by me in the general postoffice in the city of New York, on the twentieth day of December, 1895." This notice complied with all the statutory requirements.

The plaintiff argues in support of the third count that, under the laws of New York, there was a sum exceeding five dollars in the reserve fund, which belonged to deceased, and this amount was more than sufficient to purchase temporary insurance from January 21, 1896, up to the date of death.

The statute of New York claimed to be applicable is as follows: "Whenever any policy of life insurance hereafter issued by any company organized or incorporated under the laws of this state, after being in force three full years, shall, by its terms lapse, or become forfeited, for the nonpayment of any premium, or of any note given for a premium, or loan made in cash on the policy as security, or of any interest on such note or loan, unless the provisions of this act are specifically waived in the application and notice of such waiver written or printed in red ink on the margin of the face of the policy when issued, the reserve on such policy, including dividend additions calculated at the date of the failure to make any of the payments above described, according to the American Experience Table of Mortality, and with interest at the rate of four and one-half per cent per annum, after deducting any indebtedness of the insured on account of any semi-annual or quarterly premium then due, and any loan made in cash on such policy, evidence of which is acknowledged by the insured in writing, shall, on demand made, with surrender of the policy within six months after such lapse, be taken as a single premium of life insurance at the published rates of the company at the time the policy was issued, and shall be applied as shall have been agreed in the application and policy, either to continue the insurance of the policy in force, at its full amount, so long as such single premium will purchase temporary insurance for that amount at the age of the insured at the time of lapse, or to purchase, upon the same life, at the same age, paid-up insurance, payable at the same time and under the same conditions, except as to payment of premiums, as the original policy." It will be observed that the statute is, in many respects, similar to section 450 of our Civil Code.

We do not deem it necessary to decide the much discussed question, as to whether or not the policy in this case is a regular life policy, or a policy for one year only, being renewed each time the annual premium is paid. Nor is it necessary to decide the meaning of "reserve fund," nor the question as to whether or not there was sufficient in the "reserve fund" to carry temporary insurance from the 21st of January, 1896, to the death of deceased. The policy was a contract, and is to be governed by the same rules that apply to all contracts. It had its inception in the issue of the policy, and was a

complete and entire contract for the payment of $2,500, within sixty days after satisfactory proofs of the death of the insured, provided such death should occur on or before the twenty-first day of January, 1894. By the payment of the annual premiums, the extensions of the policy were carried to the twenty-first day of January, 1896. The policy then read, with the extensions, that, in consideration of the third annual premium, the defendant would pay $2,500 upon the death of deceased, provided such death should occur on or before January 21, 1896. While the law abhors a forefeiture of a policy of insurance upon technical grounds, it will not keep it alive after it has expired by its express terms. Parties to an insurance contract have the right to agree upon and insert lawful conditions, stipulations and limitations in order to protect their respective interests, and these conditions and limitations, when made, must be construed and enforced, like all other contracts, according to the expressed understanding of the parties making them. It is not for the courts to dispense with such limitations and conditions, nor by judicial legislation to insert a different contract from that deliberately made by the parties. If, then, it be conceded that by the payment of the annual premiums the insurance contract was continued in the same manner as any regular life policy, and that on January 21, 1896, there was, in the surplus or reserve, sufficient due the insured to have paid for temporary insurance until his death, it by no means follows that by the terms of the contract, or of the statute, when read into it, the policy was renewed as a temporary policy after it expired. The statute says: "Shall on demand, with surrender of the policy within six months after such lapse, . . . . be applied as shall have been agreed in the application and policy, either to continue the insurance of the policy in force at its full amount, so long as such single premium will purchase temporary insurance for that amount, . . . . or to purchase, upon the same life, . . . . paid-up insurance." By this statute, the insured, while living, is given the option, upon surrender of the policy, to purchase "upon the same life," either temporary insurance or paid-up insurance. There are no words in the statute that will bear the interpretation that the law continues the insurance in any manner, without act of the parties. Because the insured forfeited his policy, or, in other words, neglected and refused to take out another annual

policy, the law does not say that he shall be deemed temporarily insured for such time as the reserve fund would have carried his insurance. If the insured had $5.10, or any other amount, in the reserve fund, for which he made no application during his life, it does not follow that upon his death his beneficiary in a policy that had expired can recover $2,500 upon a contract that was never made. A law that would bear such construction would be uncertain, unjust and lead to serious results. In case of death, months after a policy had lapsed, it might be claimed that the policy was continued because the company, upon an investigation and accounting, according to the tables of mortality and the insurance rates, had sufficient funds, which the insured had overpaid, to have continued the policy. In such case the question as to whether or not the deceased was insured would depend, not upon the terms of the contract, but upon an accounting and investigation, which in many cases would involve figures covering years of business. In this case the insured was charged the rate of $17.48 per thousand for his annual insurance, while the charge of regular life insurance at the age of forty-one—the age of the insured when his first policy was taken out—in a regular life company, according to the American Experience Table of Mortality, would have been $33.40 per thousand. The policy was therefore issued upon the basis of annual insurance at the age of the insured at the time he took out the policy. This is evident, not only from the proof as to the charge of regular life companies, but from the clause in the policy that the renewal premiums shall be "in accordance with the schedule rates." A table of such schedule rates is annexed to the policy, giving the annual premium per thousand, at the age of forty-one, $17.48; at the age of forty-two, $17.80; and on a gradual increasing scale up to the age of sixty, when it is $41.50. The policy provided that, after deducting the expense charge of $4 per thousand, the company would divide the residue as follows: "Such amount as shall be required for this policy's share of the death losses will be appropriated as a death fund, to be used solely in payment of death claims. The remainder will be retained as a guaranty fund." As the yearly premium of deceased was not increased, it may well be inferred that the difference in cost of his insurance in the second and third years was made up by a charge against the guaranty fund.

This view is further confirmed by the words of the statute, which say (speaking of the reserve), "shall be applied as shall have been agreed in the application and policy, either to continue the insurance," etc.

In the policy there is no agreement as to the application of the reserve fund to continue the insurance in any manner until after the payment of five annual premiums. The agreement is that the surplus shall be retained as a "guaranty fund," to be "used toward offsetting any increase in the premiums on this policy from year to year." Then follows a provision that after five full years' premiums have been paid, if the policy shall be terminated by nonpayment of premiums, eighty per cent of the guaranty fund will be applied to extend the insurance, provided application be made while the policy is in full force and effect. The interpretation we have given to the statute is not without authority. In the case of Blake v. National Life Ins. Co., 123 Cal. 473, 56 Pac. 101, the insured died without having paid the premium, and without having furnished the health certificate. The policy contained a stipulation that, although failure to pay an annual premium when due would cancel a policy, still, after three full annual payments, the company guarantees, "(1) without any action on the part of the insured, a paid-up policy for one thousand and eighty dollars; (2) upon surrender of his policy within two months, a cash value of five hundred and thirty dollars and twenty cents; (3) upon application within two months, to give extended insurance for the full amount of this policy for three years two hundred and fifty-eight days." The court in the opinion said: "Necessarily these were alternative propositions. Dr. Blake took neither, as, no doubt, his fixed intention was to have his policy renewed." In Knapp v. Insurance Co., 117 U. S. 412, 29 L. Ed. 960, 6 Sup. Ct. Rep. 807, the policy contained a clause that, after the payment of the two annual premiums, then, upon default in the payment of a premium, the insured should have the right to four-fifths of the net value of the policy, according to the combined experience or actuaries' rate of mortality, as a net single premium for temporary insurance, or, at his option, a paid-up policy for the full amount of the premium paid. The court in the opinion said: "But the proviso does not say that, upon a failure to surrender the original policy and to apply for a paid-up

policy, the original policy shall stand good for a temporary insurance, but that it 'shall be void and of no effect.' . . . . Taking the whole clause together, it is clear that the assured is to have the benefit of that sum in one of two ways, at her election, and that election must be made within a certain time. As that time expired without any election, or any excuse for not making one, the forfeiture became complete, under the express provisions of the policy, and the circuit court rightly held that the action could not be maintained.'' In Insurance Co. v. Barbour, 92 Ky. 430, 15 L. R. A. 449, 17 S. W. 796, the policy provided that, if default be made in the payment of any premuim after two annual premiums shall have been paid, ''it will issue 'a paid-up, nonparticipating policy for as many tenth parts of the original sum insured as there shall have been annual premiums so paid, provided this policy be then freed from all indebtedness to the company, and provided, also, that written application be made therefor, and this policy, and all interest thereon, be surrendered in the lifetime of the insured, and within six months of the date of such default.'' It was held that the insured was not entitled to the paid-up policy unless he complied with the conditions in the original policy. In this opinion it is said: ''It is not a case where the policy ceased pro tanto, and a portion of the insurance remained in force, but the entire policy determined. It had no value after a default in the payment of a premium. It is, however, provided that, inasmuch as the insured has made a certain number of payments, he shall, provided he does certain things, be entitled to a paid-up, nonparticipating policy for a certain sum. A new right is given to him, provided he does certain things. They are conditions precedent to the vesting of the right. It does not accrue until they are done'': See, also, Stayner v. Equitable etc. Soc., 22 Misc. Rep. 53, 49 N. Y. Supp. 380; Thorensen v. Massachusetts Ben. Assn., 68 Minn. 477, 71 N. W. 669.

We are cited to two cases which it is claimed support a contrary view. We have carefully examined them, and, while we do not agree to all that is said in the opinions, we do not think they directly conflict with the views herein given. In Wheeler v. Connecticut etc. Ins. Co., 82 N. Y. 553, 37 Am. Rep. 594, the policy provided that if, after the payment of two or more annual premiums, the policy shall

cease and determine, by reason of default in the payment of any premium, then "this company will grant a 'paid-up policy' (payable as above) for such amount as the then present value of this policy will purchase as a single premium, provided that this policy shall be transmitted to, and renewed by, this company, and application made for such paid-up policy within one year after default in the payment of premium herein shall first be made." The complaint alleged that the policy was transmitted to, and received by, the company, and application made, but the company refused to issue a paid-up policy, as it had agreed to do. The remarks of the court were made in passing upon the demurrer, and it simply held that the complaint stated a cause of action. In Dorr v. Phoenix etc. Ins. Co., 67 Me. 439, the policy provided that, if default be made in the payment of premiums after two or more annual payments, then, upon surrender of the policy within twelve months, a "new policy will be issued . . . . for two-twentieths of the sum originally insured; if for three years, for three-twentieths; in the same proportion for any number of payments." Here was an express agreement to issue a new policy for a certain proportionate amount. The agreement was a part of the contract of insurance, and the insured had as much right upon default to the pro rata insurance as he had to rely upon the policy while in force. In the opinion the court used this language: "Dorr, then, up to June 29, 1874, was insured for the full amount specified in his policy. After that date to the time of his death, on March 4, 1875, he was insured for a 'part of the sum insured proportionate with the annual payments made.' "

The court, at the request of plaintiff, instructed the jury as follows: "The plaintiff alleges in her complaint that on January 21, 1896, the date when, according to the terms of the policy sued on, the seventh semi-annual premium thereon became due, there was a reserve on said policy of not less than five dollars, calculated as provided in said statute, and that said sum, taken as a single premium of life insurance at the published rates of the defendant at the time said policy was issued, was more than sufficient to purchase temporary insurance in the sum of twenty-five hundred dollars for the period of one month upon the life of John Nielsen at his age, on said 21st day of January, 1896. This is a

question of fact, which it is your province to determine, and, if from the evidence you find these allegations of the complaint to be true, you should bring in a verdict for the plaintiff for the said sum of twenty-five hundred dollars, with interest thereon at the rate of seven per cent. per annum from February 19, 1896, the date of said John Nielsen's death.'' The giving of the instruction was error. It was given upon the theory that, if there was a reserve sufficient to purchase temporary insurance, it was deemed to have been purchased. We have already endeavored to show that such is not the law. The instruction submitted to the jury, as a question of fact to be by them determined, whether or not ''there was a reserve on said policy of not less than five dollars, calculated as provided in said statute.'' The substance of the statute of New York had been given to the jury, and the jury were directed to determine the fact as to whether or not there was a reserve calculated as provided in the statute. This instruction demonstrates the difficulties that would arise by the construction given by the court to the statute. If a jury are to determine as a question of fact certain calculations according to a statute, and upon their determination the question is to be finally determined as to whether or not a policy of insurance has expired or was continued in force, it seems that the business of insurance would be upon a very uncertain basis. No one would know, until the question was submitted to a jury upon the policy experience tables of mortality and the statute, as to whether or not a policy was continued in force.

It follows from what has been said that the judgment and order should be reversed.

We concur: Chipman, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are reversed.