NELSON, APPELLANT, *v.* MUTUAL LIFE INSURANCE CO., RESPONDENT.

(No. 4,159.)

(Submitted June 1, 1920. Decided June 25, 1920.)

[190 Pac. 927.]

*Life Insurance—Nature of Contract—Forfeiture—Waiver— Burden of Proof.*

Life Insurance—Time Essence of Contract—Forfeiture.
    1. Time is of the essence of all insurance contracts, and failure to pay the premium when due, or of any installment thereof, works a forfeiture, unless by a course of dealing with the insured the insurer has evinced an intention to waive strict compliance.

    [As to conclusiveness of acknowledgment of receipt of premium in life insurance policy, see note in Ann. Cas. 1915D, 366.]

Same—Forfeiture—Waiver—Burden of Proof.
    2. Where plaintiff in an action on a life insurance pleaded reinstatement after forfeiture resultant from nonpayment of an installment of the premium, asserting that the insurer waived the provision of the contract which required the insured to furnish a certificate of good health satisfactory to the company as a condition precedent to reinstatement, she had the burden of establishing the waiver of forfeiture.

Same—Retention of Payment of Arrearage—When not Waiver.
    3. Where, two months after an insurance policy had lapsed, insured sent a check covering the arrearage, without, however, including interest thereon as provided in the contract, the company retaining the check and advising him that it would be held in suspense until he had furnished a satisfactory certificate of health, the retention of the check alone did not constitute a waiver of forfeiture or result in reinstatement.

*Appeal from District Court, Yellowstone County; Charles A. Taylor, Judge.*

ACTION by Lura A. Nelson against the Mutual Life Insurance Company of New York. From a judgment for defendant and order denying new 'trial, plaintiff appeals. Affirmed.

*Mr. F. B. Reynolds, Mr. Jas. L. Davis* and *Mr. Clyde McLemore,* for Appellant, submitted a brief and one in reply to that of Respondent; *Mr. Reynolds* argued the cause orally.

The default upon the part of the insured in failing to pay premium upon August 10, or within thirty days thereafter, was waived by the company: (a) By its acceptance of the payment thereof upon October 8.    (25 Cyc. 870; 14 R. C. L., "Insurance," 367; *Shea* v. *Massachusetts Ben. Assn.,* 160 Mass. 289, 39 Am. St. Rep. 475, 35 N. E. 855; *Rice* v. *New England Mut. Aid Society,* 146 Mass. 248, 15 N. E. 624; *Williams* v. *Maine State Rel. Assn.,* 89 Me. 158, 36 Atl. 63; *Life Ins. Clearing Co.* v. *Altschuler,* 55 Neb. 341, 75 N. W. 862; *Murray* v. *Home Ben. Life Assn.,* 90 Cal. 402, 25 Am. St. Rep. 133, 27 Pac. 309; *Massachusetts Ben. Life Assn.* v. *Robinson,* 104 Ga. 256, 42 L. R. A. 261, 30 S. E. 918; *Loftis* v. *Pacific Mutual L. Ins. Co.,* 38 Utah, 532, 114 Pac. 134; *Occidental Life Ins. Co.* v. *Jacobson,* 15 Ariz. 242, 137 Pac. 869.)    (b) By its demand of payment of the next quarterly premium, which became due November 10.    (*Murray* v. *Home Ben. Life Assn.,* 90 Cal. 402, 25 Am. St. Rep. 133, 27 Pac. 309; *Williams* v. *Empire Mut. Ann. & Life Ins. Co.,* 8 Ga. App. 303, 68 S. E. 1082; *Stylow* v. *Wisconsin Odd Fellows' M. Life Ins. Co.,* 69 Wis. 224, 2 Am. St. Rep. 738, 34 N. W. 151; *Denver Life Ins. Co.* v. *Crane,* 19 Colo. App. 191, 73 Pac. 875; *Beatty* v. *Mutual Reserve Fund Life Assn.,* 75 Fed. 65, 21 C. C. A. 227.)    (c) By cashing the insured's checks, and retaining the money from October 8 or 9, without even offering to return it until after the death of the insured in December, and the tender back made after insured's death was not kept good by bringing the money into court.    This the company could not do and at the same time insist upon a forfeiture of the policy under which the money had been paid to it by the insured.    (*Andrus* v.

*Fidelity Mut. Life Ins. Assn.,* 168 Mo. 151, 67 S. W. 582; *Life Ins. Clearing Co.* v. *Altschuler,* 55 Neb. 341, 75 N. W. 862; *Jaggi* v. *Prudential Ins. Co.,* 191 Mo. App. 384, 177 S. W. 1064; *Rasmusen* v. *New York Life Ins. Co.,* 91 Wis. 81, 64 N. W. 301; *Modern Woodmen of America* v. *Jones,* 52 Ind. App. 149, 98 N. E. 1006; *Coile* v. *Order of United Commercial Travelers'* etc., 161 N. C. 104, 76 S. E. 622; *Bingler* v. *Mutual Ben. Life Ins. Co.,* 10 Kan. App. 6, 61 Pac. 673.)

The waiver, once made, was irrevocable. (*Denver Life Ins. Co.* v. *Crane, supra; Life Ins. Clearing Co.* v. *Altschuler, supra; Mettner* v. *Northwestern Nat. Life Ins. Co.,* 127 Iowa, 205, 103 N. W. 112; *Keys* v. *National Council K. & L. of S.,* 174 Mo. App. 671, 161 S. W. 345; *Home Fire Ins. Co.* v. *Kuhlman,* 58 Neb. 488, 76 Am. St. Rep. 111, 78 N. W. 936; *Baltimore Life Ins. Co.* v. *Howard,* 95 Md. 244, 52 Atl. 397; *Burgess* v. *Mercantile Town Mut. Ins. Co.,* 114 Mo. App. 169, 89 S. W. 568.) If the forfeiture had been waived, obviously the company had no right, in its letter of October 14, to demand a certificate of health. (*True* v. *Bankers' Life Assn.,* 78 Wis. 287, 47 N. W. 520; *Aetna Life Ins. Co.* v. *Sanford,* 200 Ill. 126, 65 N. E. 661; *New England Mut. Life Ins. Co.* v. *Springgate,* 129 Ky. 627, 19 L. R. A. (n. s.) 227, 112 S. W. 681, 113 S. W. 824.) In its letter of December 8, the company unequivocally granted to the insured an extension of time to December 25, for the furnishing of such certificate as well as for the payment of the premium due November 10. Such extension, being unrevoked, was valid, and had the effect of continuing the policy in force up to the date of the death of the insured, which took place within the period of extension, on December 13. (*Knarston* v. *Manhattan Life Ins. Co.,* 140 Cal. 57, 73 Pac. 740; *Aetna Life Ins. Co.* v. *Sanford,* 200 Ill. 126, 65 N. E. 661; *Noem* v. *Equitable Life Ins. Co.,* 37 S. D. 176, 157 N. W. 308; *Michigan Mut. Life Ins. Co.* v. *Custer,* 128 Ind. 25, 27 N. E. 124; *Mutual Reserve Life Ins. Co.* v. *Heidel,* 161 Fed. 535, 88 C. C. A. 477; *Carr* v. *Prudential Ins. Co.,* 115 App. Div. 755, 101 N. Y.

Supp. 158; *Stewart* v. *Union Mut. Life Ins. Co.,* 155 N. Y. 257, 42 L. R. A. 147, 49 N. E. 876; *Rouleau* v. *Continental Life Ins. etc. Co.,* 45 Utah, 234, 144 Pac. 1096; *Knickerbocker Life Ins. Co.* v. *Norton,* 96 U. S. 234, 24 L. Ed. 689 [see, also, Rose's U. S. Notes]; *Homer* v. *Guardian Mut. Life Ins. Co.,* 67 N. Y. 478.)

*Mr. Charles R. Leonard, Mr. O. F. Goddard* and *Mr. Earle N. Genzberger,* for Respondent, submitted a brief; *Mr. Leonard* argued the cause orally.

There was no waiver. The position of the company is fully defined in its letters. There was no unconditional acceptance of the money on October 8, or any other time, nor is there any evidence in the correspondence or conduct of respondent to show that there was any intention to waive the default. There was no demand in the letter of December 8 for payment of the subsequent premium which fell due November 10. This letter merely mentioned the matters which were necessary for reinstatement and was not the formal notice or demand for payment of premium. The conclusion cannot be escaped that the policy had actually lapsed and become void by reason of the failure to pay the premium when due on August 10, or within thirty days thereafter. Under the undisputed terms of the policy two things were required for its reinstatement: First, the payment of the premium with interest, and, second, the furnishing of satisfactory proof of insurability; and the evidence does not show any action whatever or any intention on the part of the company to waive either of these requirements. Under the terms of the policy that the contract "shall immediately cease and become void," it had expired and it could only be restored upon the terms above mentioned. The policy lapsed through default on the part of the insured to observe its plain terms.

Counsel in his brief has made extensive reference to decisions of courts of other states, but none to Montana supreme court decisions, although they have a direct bearing upon the

case at bar, and, in fact, are decisive upon every point involved. (See *Kennedy* v. *The Grand Fraternity*, 36 Mont. 325, 25 L. R. A. (n. s) 78, 92 Pac. 971; *Sullivan* v. *Germania Life Ins. Co.*, 15 Mont. 522, 39 Pac. 742; *Collins* v. *Metropolitan Life Ins. Co.*, 32 Mont. 329, 108 Am. St. Rep. 578, 80 Pac. 609, 1092.)

The retention of a premium after application for reinstatement pending investigation of the truth of the certificate that insured was in good health does not constitute a reinstatement or a waiver, nor does it put the policy in force. (*Fraser* v. *Aetna Life Ins. Co.*, 114 Wis. 510, 90 N. W. 476; 14 R. C. L. 989; 19 Am. & Eng. Ency. of Law, 58.) The acceptance or retention of premiums after forfeiture may be on the condition that the insured is then in good health, or that a medical certificate of good health be furnished, in which case there is no waiver unless insured is in good health and he furnishes the certificate. (25 Cyclopedia of Law Procedure, p. 871; *New York Life Ins. Co.* v. *Scott*, 23 Tex. Civ. 541, 57 S. W. 677; *Slocum* v. *New York Life Ins. Co.*, 228 U. S. 364, Ann. Cas. 1914D, 1029, 57 L. Ed. 879, 33 Sup. Ct. Rep. 523 [see, also, Rose's U. S. Notes]; *Fraser* v. *Aetna Life Ins. Co.*, 114 Wis. 510, 90 N. W. 476; *Crook* v. *New York Life Ins. Co.*, 112 Md. 268, 75 Atl. 388; *Mutual Reserve Fund Life Assn.* v. *Lovenberg*, 24 Tex. Civ. 355, 59 S. W. 314; *New York Life Ins. Co.* v. *Scott*, 23 Tex. Civ. App. 541, 57 S. W. 677; *Clifton* v. *Mutual Life Ins. Co.*, 168 N. C. 499, 84 S. E. 817.) We cite also the case of *Nielsen* v. *Provident Sav. Life Assur. Soc.*, 6 Cal. Unrep. 804, 66 Pac. 663, which we contend is a parallel case and sustains our contention. The opinion was written by the commissioners, and while their finding in the case is not sustained in the later opinion by the court in 139 Cal. 332, 96 Am. St. Rep. 146, 73 Pac. 168, the reversal was on another point and the reasoning of the first opinion as to waiver is in no way impaired.

In all the cases cited by appellant there is some condition or set of conditions which clearly differentiates the cases from

the case at bar. Such, for instance, are some of the cases where the company has sent an unconditional demand or request for payment of a premium after default was made, plainly indicating that the policy was still in force. In other cases the insured has simply been notified that the premium is overdue or is still unpaid, without any statement that 'the policy has lapsed or is void. Such, for instance, is the case of *Noem* v. *Equitable Life Ins.' Co.*, 37 S. D. 176, 157 N. W. 308. We are confident this court will conclude that they do not sustain the position taken by appellant. Nor do they gainsay the position established by this court that the policy, having lapsed through failure to make payment of the premium, can only be reinstated in the manner specified in the policy.

MR. JUSTICE COOPER delivered the opinion of the court.

Action to recover upon a policy of life insurance in the sum of $2,000. The cause was tried by the court without a jury and resulted in a judgment for the defendant. Plaintiff appeals from the judgment and from an order denying her a new trial.

The provisions of the policy pertinent to this inquiry are as follows:

"*Premiums.* All premiums are payable in advance at said home office or to any agent of the company upon delivery, on or before date due, of a receipt signed by either the president, vice president, second vice president, secretary or treasurer of the company and countersigned by said agent.

"A grace of 30 days (or one month, if greater), subject to an interest charge at the rate of 5 per centum per annum, shall be granted for the payment of every premium after the first, during which time the insurance shall continue in force. If death occur within the period of grace, the overdue premium and the unpaid portion of the premium for the then current policy year, if any, shall be deducted from the amount payable hereunder.

"Except as herein provided, the payment of a premium or installment thereof shall not maintain this policy in force beyond the date when the next premium or installment thereof is payable. If any premium or installment thereof be not paid before the end of the period of grace, then this policy shall immediately cease and become void, and all premiums previously paid shall be forfeited to the company, except as hereinafter provided. * * *

"*Reinstatement.* Unless it shall have been surrendered for its cash value, this policy may be reinstated at any time within three years from date of default in payment of any premium, upon evidence of insurability satisfactory to the company and upon payment of the arrears of premium with interest thereon at the rate of 5 per centum per annum. * * *

"Agents are not authorized to modify this policy or to extend the time for paying the premium."

By mutual agreement, the policy was changed to permit the annual premiums to be paid in quarterly installments of $16.49 on February 10, May 10, August 10, and November 10, of each year.

The determinative issue in the case is presented by the sixth paragraph in the complaint, as follows: "That said Merl S. Nelson fulfilled all the conditions of said policy on his part to be performed, and paid all premiums provided for in said policy up to the date of his death, in accordance with said policy and agreement for quarterly payments, as above mentioned, except the installment of premium which was due August 10, 1915, was paid October 13, 1915, and the installment due November 10, 1915, was never paid." All the allegations of the complaint are denied by the answer. The premium payments were all met to the satisfaction of the company, until August 10, 1915, the policy being in full force on that date, at which time, however, a quarterly payment of $16.49 on the annual premium fell due. On October 8 insured's check for that amount was received by the company and

placed in its suspense account. The insured died on December 13, 1915.

Appellant's position is that the forfeiture was waived:

"1. (a) By the acceptance of the payment of premium on October 8; (b) by demand of payment of the next quarterly premium, which became due November 10; and (c) by the retention of the money from receipt thereof on October 8, without even offering to return the same until after the death of the insured.

"2. Having waived the forfeiture, the company had no right to require a certificate of health.

"3. The time for the payment of the premium which became due November 10 was extended to December 25, by reason whereof the policy was in full force and effect at the death of the insured."

If the retention of the proceeds of the check is to be construed as a waiver of the health certificate the policy requires, or, what amounts to the same thing, "evidence of insurability satisfactory to the company," the conclusion would logically follow. Did the company forego this important right?

On September 9, 1915, the following letter was mailed to the insured by the agent of the company in the city of Spokane, Washington, and received in due course:

"Mr. M. S. Nelson,

"Billings,

"Dear Sir: I regret to note that you have allowed your policy to lapse by default in the payment of the last premium. This may have been an oversight, or there may be something about your contract which you do not fully understand. In either event, I trust you will favor us with your reason for discontinuing. Frequently a policy that does not exactly meet the requirements of a policy holder may be changed to some other plan, or, if necessary, reduced in amount. If it is inconvenient for you to pay the premium at this time, it is possible we can assist you with a loan, if the contract has been in force three years; or the payments may be changed to semi-

annual or quarterly. At any rate we would like to hear from you on the subject. A life insurance policy is too valuable an asset to your estate to be cast aside if it can possibly be avoided, and it should be borne in mind that to drop a policy or change it for a contract in another company is always to the detriment and cost of the insured. Being a mutual company our interests are the same, and we are always pleased to answer any questions or make explanations which may be of service to our members. Trusting that you will take up the matter of restoring the policy, and that we may hear from you by return mail, I am, *etc.*,

"W. H. SHIELDS, Manager."

The following indorsement appears on the bottom of the letter last referred to, in the handwriting of Merl S. Nelson: "Inclosed find check. Merl S. Nelson, 203 S. 30th St., Billings, Mont." This, the father of the insured testified, was found shortly after his death, in a tin box containing his private papers, together with a canceled check dated September 5, 1915, in the sum of $16.49, showing its indorsement and deposit by defendant and return in due course to the insured.

From the testimony of Miss Mary I. Williams, it appears that on October 14, 1915, after the receipt and deposit of the check, the following letter was sent to the insured:

"Dear Sir: We beg to acknowledge receipt of check for $16.49 tendered in payment of the premium due August 10 last under your policy No. 2043476, but as this remittance was not received within the 30 days of grace allowed by the company the policy has now lapsed, and in order to restore same it will be necessary for you to furnish the company with a satisfactory certificate of health. We are inclosing you herewith blank for this purpose, which, if you will kindly take to either of our examiners, Dr. James Chapple or Dr. E. W. Thuerer, of your city, he will be glad to complete same for you. The fee charged in this connection will be paid by the company. Trusting you will give this matter attention at

your earliest convenience, so that your policy may be restored, we are, *etc.,*

"W. H. SHIELDS, Manager."

To this there was no reply.

On December 8, 1915, the following letter was sent from the office of the defendant in Spokane, Washington, in the regular routine of the business:

"Dear Sir: On October 14, last, we acknowledged receipt of your check for $16.49 tendered in payment of premium due August 10, last, under your policy No. 2043476. Of course, this check could not be accepted, as your policy had already lapsed; it was therefore placed in suspense pending receipt of satisfactory certificate of health, but to date we do not appear to have received this certificate. Another quarterly premium of $16.49 fell due November 10, last, and check for this amount must now accompany the certificate of health to this office. We would very much like to have you give this matter your attention at your earliest convenience, so that the same may be cleared up before the first of the year. If we do not hear from you on or before December 25, we will refund your check of $16.49."

In the case of *Kennedy* v. *The Grand Fraternity*, 36 Mont. 325, 25 L. R. A. (n. s.) 78, 92 Pac. 971, the constitution and by-laws of the defendant society provided: "That if the assured, denominated 'frater,' shall fail to pay his monthly dues on or before the last secular day of the month for which the same are due and payable, he shall 'thereupon become suspended by his own act, and his benefit certificate or certificates shall be absolutely void.'" This provision is identical, in effect, with the forfeiture clause in the policy under consideration.

It seems to be well settled that time is of the essence of all [1] insurance contracts; and, even though the condition be construed as a condition subsequent, failure to pay when due forfeits the contract. (*New York Life Ins. Co.* v. *Statham*, 93 U. S. 24, 23 L. Ed. 789 [see, also, Rose's U. S. Notes].)

When the annual premium is payable in installments, a failure to pay any installment works a forfeiture. (*Klein* v. *New York Life Ins. Co.,* 104 U. S. 88, 26 L. Ed. 662 [see, also, Rose's U. S. Notes].) This court so held in the *Kennedy Case,* where the rule is stated thus: "The mere failure * * * to pay his dues for April and May *ipso facto* worked a forfeiture of his membership and an abrogation of the contract between the parties." To the same effect is the case of *Nielsen* v. *Provident etc. Assur. Soc.,* 6 Cal. Unrep. 804, 66 Pac. 663. (See, also, 2 Bacon on Life and Accident Insurance, sec. 453; *Holly* v. *Metropolitan Ins. Co.,* 105 N. Y. 437, 11 N. E. 507.) The language of the policy in suit can mean nothing less. Punctuality in the payment of the premiums is a prerequisite in all contracts of life insurance. Indeed, no life insurance company could continue to do business without a strict adherence to the terms of its contracts. The unequivocal holding in the *Kennedy Case* is that a failure on the part of the insured to meet the payments within the time provided removes the liability of the insurer, unless, by a course of dealing with the insured, it has evinced an intention to waive evidence of continued insurability, as this language implies: "This policy may be reinstated at any time, within three years from date of default in payment of any premium upon evidence of insurability satisfactory to the company and upon payment of the arrears of premium with interest thereon at the rate of 5 per centum per annum." (19 Ency. of Law, 2d ed., 44, 47, and cases cited; *Butler* v. *Grand Lodge, A. O. U. W.,* 146 Cal. 172, 79 Pac. 861; 2 Bacon on Benefit Societies and Life Insurance, 3d ed., sec. 385.) The plaintiff in the *Kennedy Case,* as in the case at bar, pleaded reinstate-

[2] ment of the insured, thereby assuming the burden of establishing a waiver of the forfeiture. The claim was there made that, because the application for reinstatement was accompanied by the necessary fees then in arrears, assured had met all the requirements of the constitution and by-laws of

the society, and neither the secretary nor its officers could refuse to recognize such reinstatement.

But, as we have seen, a contract of insurance can only be kept alive by payment of the premiums within the time specified. In case of default, as here shown, it was incumbent upon the insured to meet the provision of the policy requiring certificate of good health "satisfactory to the company," before it could be revived, unless production of the health certificate was waived by the company. Says Mr. Justice Holloway in the *Kennedy Case:* "This contract requires, in addition to the acts and things to be done on the part of the insured, that the society, or its officers, shall take affirmative action which involves the exercise of discretion and judgment; for the insured is only reinstated upon furnishing satisfactory evidence that he is in good health, and securing the approval of the Grand Secretary." To precisely the same effect are *New York Life Ins. Co.* v. *Scott,* 23 Tex. Civ. App. 541, 57 S. W. 677; *Clifton* v. *Mutual Life Ins. Co.,* 168 N. C. 499, 84 S. E. 817. *Collins* v. *Metropolitan Life Ins. Co.,* 32 Mont. 329, 108 Am. St. Rep. 578, 80 Pac. 609, 1092, is in harmony with these views.

By the express terms of the policy, the liability of the defendant was unalterably fixed. It could not escape payment of the principal sum to the beneficiary upon the death of the insured, had the premiums been paid according to the terms of the policy. By the same token, the beneficiary could not hope to enjoy its fruits without prompt payment of the premiums, or within the time fixed by the policy. These obliga-
[3] tions were mutual. Upon default of any one of the payments specified the liability of the company ceased immediately, and the parties were not restored to their *status quo ante* until the insurability of Nelson had been proven to the satisfaction of the company, and the arrears of the premium *with interest at the rate of five per centum per annum paid,* as the language of the policy plainly indicates. The August 10 installment was nearly two months overdue, interest accru-

ing meanwhile. Of the interest due no tender was made. The check did not reach the office of the company until nearly sixty days after the payment was due. To work a restoration of the policy two things were necessary under its provisions: Proof of insurability satisfactory to the company, and a tender of the overdue premium and interest from the time of default. Assuming that by retaining the check the company waived the interest on the overdue premium, evidence that it did not waive production of the health certificate, as the policy required, is furnished in the three letters addressed to the insured, advising him that the policy had lapsed and that the health certificate was a condition precedent to the restoration of his rights in the premises. (*Thompson* v. *Fidelity Mutual Life Ins. Co.,* 116 Tenn. 557, 115 Am. St. Rep. 823, 6 L. R. A. (n. s.) 1039, 92 S. W. 1098; *Melvin* v. *Piedmont Ins. Co.,* 150 N. C. 398, 134 Am. St. Rep. 943, 64 S. E. 180.)

· In *Clifton* v. *Mutual Life Ins. Co.,* 168 N. C. 499, 84 S. E. 817, the supreme court of North Carolina, dealing with a similar question, said: "We agree with his honor that there is no evidence of a waiver of the conditions of the policy. The defendant · had a right to receive the premium and hold it, awaiting the return of the health certificate. That not being forthcoming, the defendant properly returned the premium after the death of the insured. Receiving the premium under such circumstances is no evidence of a waiver. * * * In *Hay* v. *Insurance Co.,* 143 N. C. 257, 55 S. E. 623, the chief justice very pertinently says: 'It is always sad when one who has made payments on his policy deprives his family of expected protection by failure to pay at a critical time. But insurance is a business proposition, and no company could survive if the insured could default while in good health, but retain a right to pay up when impaired health gives warning. It is a warning of which the company also has the right to take notice when asked to waive a forfeiture. It is the insured's own fault when he does not make a payment as he contracted.' "

The letter of September 9, addressed to Merl S. Nelson, informed him that he had then allowed his "policy to lapse by default in payment of the last premium," a fact of which he was presumed to have knowledge. By the letter of October 15, receipt of his check for $16.49, tendered in payment of the premium due August 10, was acknowledged and he was again advised that his policy had lapsed and that in order to *restore* the same it would be necessary to furnish the company with a satisfactory certificate of health; and again, on December 8, by letter he was advised that his policy had already lapsed and the proceeds of his check placed in suspense pending receipt of certificate of health which he had not then furnished, and never did furnish, and that "if we do not hear from you on or before December 25, we will refund your check of $16.49."

Our opinion is that the policy had lapsed, that the letters addressed to the insured clearly negatived a waiver of the forfeiture committed by the insured, and that the judgment and order refusing plaintiff a new trial should be and are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY and MATTHEWS concur.