ZIMMERMAN, Administrator, Appellant, *v.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Respondent.

(No. 6,787.)

(Submitted September 12, 1931. Decided September 23, 1931.)

[3 Pac. (2d) 278.]

*Mr. L. L. Wheeler* and *Mr. D. R. Young,* for Appellant, sub-mitted a brief; *Mr. Young* argued the cause orally.

338

*Mr. Charles R. Leonard* and *Messrs. Loud & Leavitt,* for Respondent, submitted a brief; *Mr. Leonard* and *Mr. W. B. Leavitt* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an action to recover upon a policy of insurance which had lapsed but which plaintiff claims had been reinstated by the defendant company before the insured's death.

The facts, so far as necessary to be stated, are that Maurice O. Zimmerman and Effie E. Zimmerman each obtained an "ordinary life" policy for $3,000 from defendant on September 3, 1918. The annual premium was $110.10. It was therein provided that at any time while the policy was in force, provided at least three years' premiums had been paid, no premium being in default, the company would loan to the insured "on proper assignment and delivery of this policy and on the sole security thereof" an amount to be ascertained as specified in the policy. The third annual premium, due on the policies September 3, 1920, was not paid when due nor within the thirty days' period of grace provided for. On October 27, 1920, Mr. and Mrs. Zimmerman called upon Mr. Pearson, the company's local agent at Belle Fourche, South Dakota, through whom the insurance had been written, for the purpose, it would seem, of ascertaining whether they could save anything from the policies. Mr. Pearson advised them to secure the reinstatement of the policies by borrowing from the company the amount of the premiums due. Accordingly Mrs. Zimmerman on that day signed an application for the reinstatement of her policy, and also one for a loan which embraced an uncompleted promissory note in the sum of $93.40, being the difference between the amount of the premium and the value of the cash dividend then accrued on the policy. She asked that the cash dividend be applied to make up the full amount of the premium. Mr. Zimmerman did the like with respect to his policy. At the time, Pearson testified, he told Zimmerman (who at all times acted for his wife as well as himself) "that part of the deal was the deposit of the policies with the company, because that was the sole security for these loans, and I gave him one of our large manila

printed envelopes, addressed to the manager and asked him to please send both policies in as soon as he got home."

The application for the loan, or promissory note, was not dated. It reads in part as follows:

"$93.40.                    New York ........ 19.....

"On September 3, 1921, without grace I promise to pay to the order of The Mutual Life Insurance Company of New York Ninety three and 40/100 Dollars, with interest at the rate of 6 per cent. per annum, at the Home Office of said Company in the City of New York, for value received, hereby depositing with and assigning to said Company Policy No. 2521536 as collateral security for the repayment of this loan as herein provided."

Then follow lengthy provisions. Toward the end of the document it is stated that the application for the loan is made to the company at its Home Office in the city of New York, and the "note was made and delivered there." After the signature appears a notice respecting execution of the note and then, "Read Carefully." "General Instructions" follow. Two of them are: "1. The note will be dated by the Company on the day the loan is completed. * * * 6. In all cases where loan is made without the production of the original policy, a surety company bond in double the amount of the loan will be required."

Four days after executing these papers, which were forwarded by Pearson to John K. Cressy, manager for the company at Sioux Falls, South Dakota, the Zimmermans wrote Mr. Cressy a letter in which they said that on October 27 they had signed some papers for a loan from the company "for another year's payment on our policy which we did without reading them." They asked him to send them the papers so they could read them over and said the reason was that when they arrived home and read over their policy, for the first time they found it was not the policy they wanted. And they said: "Will you please write & explain the loan proposition to us And please send the papers We signed, so we will understand them. Then if we can get a loan from the Co— We

can send the policy to you or go to Pearson and have it fixed up.''

Under date of November 9, 1920, Mr. Cressy wrote to Mr. Zimmerman acknowledging receipt of the letter but informing him that the notes covering the proposed loans had been forwarded to the home office for approval and consequently could not be returned to them, adding: ''We are, however, enclosing a blank note similar to the ones which you executed, this being a stock form of note used for these policy loans.'' After explanations respecting the loan Cressy added that the personal certificates (relating to health) which the Zimmermans had executed would be available for use only a short time, ''and unless the policies are forwarded to us soon the Company will demand a medical examination to reinstate the policies. We would suggest that you forward the policies to us immediately in order that we may have them promptly reinstated.''

The Zimmermans did not request any further information. On November 19, 1920, Cressy wrote again urging Zimmerman to forward the policies. Zimmerman admitted that he had been requested to send in the policies even before he wrote Cressy; he said he had overlooked the statement in the policy that it was necessary to assign it in order to procure the loan; he admitted that he understood from the letters that in order to have the matter completed and to be permitted to pay the third premium it would be necessary to send in the policies. Nevertheless, the Zimmermans did not do so, and thus the matter stood until Mrs. Zimmerman died in August, 1921. At some time, which the record does not disclose, Mrs. Zimmerman directed the defendant to issue to her a draft for any unpaid dividends on her policy. On December 24, 1921, Mr. Zimmerman notified the company of Mrs. Zimmerman's death. On January 23, 1922, Cressy wrote Zimmerman saying: ''Our records indicate that this policy and also your policy No. 2521488 lapsed for nonpayment of the premiums due September 3rd, 1920. We offered to reinstate these policies by means of a loan to carry the policies for the next year and you signed the agreements but although both Mr. Pearson and this office

repeatedly requested you to forward the policies and endeavored to induce you to proceed with the matter you did not send the policies to us and we were unable to proceed with the matter."

In the fall of 1927 Mr. Zimmerman made application for letters of administration of Mrs. Zimmerman's estate. Therein he stated that the estate consisted of 160 acres of land. No personal property was mentioned, although it appears that the policy was payable to her estate. On June 1, 1928, Zimmerman as administrator forwarded to the company proofs of death. Thereupon the company offered $35, the amount of earned dividends on Mrs. Zimmerman's policy, in settlement. The offer was refused and this suit followed, plaintiff demanding judgment for the full amount of the policy less the amount of the note and cash dividend.

The issues being made up, trial was had to the court. At the commencement of the trial the defendant paid into court the sum of $35 with interest, amounting in all to $62.19. Plaintiff has appealed from a judgment in favor of defendant.

Plaintiff's position is that because defendant retained the "note" until after Mrs. Zimmerman's death and until January 23, 1922, it must be held that defendant accepted the same, waived the performance of the condition, hence reinstated the policy.

This position cannot be sustained. A mere recitation of the foregoing facts would seem sufficient to justify the trial court's action. The policy had lapsed by the failure of the insured to pay the premium. Advised that it could be reinstated by securing a loan from the company the insured made application therefor. She knew, or should have known, from the terms of the policy itself that a loan could not be obtained without assigning and delivering the policy to the company as security. It was her duty to read the policy and all the conditions and limitations it contained, and if she did not it was her fault. (*Collins* v. *Metropolitan Life Ins. Co.*, 32 Mont. 329, 108 Am. St. Rep. 578, 80 Pac. 609, 612, 1092.) In applying for the loan she signed a document, embracing the terms

of a promissory note, in which it was stated specifically that she was depositing with and assigning to the company the policy as collateral security for the repayment of the loan. It was her business to read the document before signing it. "A contractor must stand by the words of his contract, and if he will not read what he signs, he alone is responsible for his omission. (*Upton* v. *Tribilcock*, 91 U. S. 45, 23 L. Ed. 203.)" (*W. T. Rawleigh Co.* v. *Washburn*, 80 Mont. 308, 260 Pac. 1039, 1041.)

But at the very time of signing the application for the loan, the "note," she was told that the deposit of the policy was essential, "part of the deal." She was urged by letters sent by Pearson and Cressy to send in the policy. To state it shortly, the fact is undeniable that she knew that as a prerequisite to obtaining the loan it was essential for her to deposit the policy with the company as collateral security, and that she could not get the loan without it. It is not alleged, nor is it asserted, that she was misled by anything said or done in behalf of the company. No reasonable excuse is offered for her failure to comply with the company's repeated requests for the security required, which she had agreed to, and which it was within her power to, furnish. It is said in *Collins* v. *Metropolitan Life Ins. Co.*, supra, that the insured cannot "be permitted to enter deliberately into a contract, and then, after disregarding its plain conditions, be heard to say that the other contracting party is nevertheless bound."

There is no evidence whatever of a waiver of the condition specified in the policy and in the application for the loan; the evidence is the other way. There was no reason why the company should not hold the application for the loan, embracing the undated promissory note, until the insured should furnish the security required and agreed to be furnished. Even conceding that the company should have terminated the negotiation sooner by returning the papers, it does not follow that by retaining them it can be presumed, in the face of the admitted facts, that the company intended to waive the security. (*Nelson* v. *Mutual Life Ins. Co.*, 58 Mont. 153, 190 Pac. 927;

*Kennedy* v. *Grand Fraternity,* 36 Mont. 325, 25 L. R. A. (n. s.) 78, 92 Pac. 971; and see *Gould* v. *Equitable Assur. Soc.,* 231 N. Y. 208, 131 N. E. 892.)

The judgment is affirmed.

Associate Justices Galen, Ford, Angstman and Matthews concur.