## NATHAN S. GARBER v. EQUITABLE LIFE ASSURANCE SOCIETY OF UNITED STATES.[1]

December 7, 1934.

No. 30,084.

[1]Reported in 257 N. W. 506.

*Hunt & Palmer*, for appellant.

*Mitchell, Gillette, Nye & Harries* and *W. O. Bissonett*, for respondent.

HOLT, JUSTICE.

Plaintiff appeals from the order denying a new trial after findings in favor of defendant.

The action is for the reinstatement of a health and accident policy issued by defendant to plaintiff, which defendant has declared terminated for failure to pay the premium on time. The facts are not in dispute and are for the most part in written or printed form. On May 19, 1921, defendant issued its noncancelable accident and health policy to plaintiff. The yearly premium was $134.30, due and payable on the 19th day of May each year, with 31 days of grace during which time defendant was entitled to claim interest at the rate of five per cent. The payment of the premium kept the insurance in force for 12 months after the date upon which the premium became due and payable. It appears that plaintiff usually paid the premiums by check, and the bad habit was indulged in of mailing the check on the last day of grace at Duluth, where plaintiff lived, addressed to defendant's state agent at Minneapolis. But each year for several years prior to May 19, 1933, the check, when received on the 20th of June, was accepted without objection and without requiring interest. Plaintiff's wife, doing business under the name of Garber Brothers, attended to the payment of the premiums for at least three years prior to 1933. On the 19th day of June, 1933, the check of Garber Brothers, signed by Mrs. Garber, was mailed at Duluth, Minnesota, to defendant's agent at Minneapolis. To the check was pinned a typewritten slip reading:

"Please hold this check until Tuesday, June 27, 1933."

The check and slip attached reached the defendant's agent in Minneapolis on June 20. The next day the agent returned the check to plaintiff by mail, the letter, dated June 21, 1933, reading:

20

"Mr. Nathan S. Garber,

"1925 W. Sup. St.

"Duluth, Minnesota

"Dear Sir:                    Re:   Policy HY 30438

"We have your check in the amount of $134.30, which was tendered in payment of the annual premium on the above numbered Accident and Health Policy due May 19, 1933.  With your check you sent us a memorandum instructing us to hold this check until Tuesday, June 27.

"Inasmuch as your policy would have lapsed by that date, we find it necessary to return your check to you.  You may return this check to us at the time it is negotiable but it will also be necessary for you to furnish us with evidence of your insurability in the form of a medical examination.  For this purpose you may call upon Dr. F. W. Spicer, of Duluth, Minnesota, and the Society will be prepared to pay the necessary medical charges.

"Very truly yours,

"J. Y. Cudworth, Cashier."

As soon as plaintiff received the letter he went to the doctor named and was examined.  The doctor stated the result upon a printed blank, evidently furnished him by defendant.  It is a large sheet, both sides filled with closely printed matter and appropriate blank spaces to record the doctor's findings.  It is addressed to defendant and is for restoration of policy HY 30438, and purports to be signed by Nathan S. Garber.  The check with this doctor's report was remailed to defendant's agent at Minneapolis.  The check was deposited by the agent in a Minneapolis bank on June 24 for collection and was paid by the bank in Duluth on which it was drawn, on June 26.  The agent mailed plaintiff a receipt dated June 23, stating in substance that the sum of $134.30 was received only for transmission to the New York office of defendant and that defendant was not committed to the acceptance thereof for the purpose of restoration, or to any extension of time for the payment of premium or interest, and if not accepted for the purpose offered the amount named would be returned to plaintiff.  Nothing

further transpired till plaintiff received this letter, dated July 12, 1933, from defendant's district manager:

"Dear Mr. Garber:

"We have been advised by our Home Office that after giving careful consideration to your application for the reinstatement of your policy No. HY 30438, which you recently submitted, they are unable to approve the restoration of the contract at this time and the policy must therefore remain as lapsed.

"In view of the above facts, we are enclosing check for $134.30 in refund of the amount held in suspense on this case. We regret that we are unable to advise you more favorably."

Plaintiff refused the check and brought this action.

The trial court made two fact findings adverse to plaintiff which are assailed on this appeal as not justified by the evidence. The findings are:

"4. That according to the terms of said contract of insurance, the annual premium of $134.30 became due and payable on May 19, 1933, with a provision for thirty-one days' grace during which said premium might be paid. That plaintiff did not pay and defendant did not receive the annual premium of $134.30 on or before June 19, 1933, the last date upon which said payment could be made. That default having been made in the payment of said premium, the defendant declared said contract at an end and notified plaintiff to that effect.

"5. That after said policy had lapsed because of nonpayment of premium, the plaintiff applied for restoration of said policy. That defendant accepted from plaintiff plaintiff's check for $134.30, with reservations that if defendant, after investigation, refused to grant said restoration, said premium would be returned to plaintiff. That defendant determined not to permit the restoration of said policy and tendered to plaintiff the premium payment of $134.30."

The facts stated in the first two sentences of finding 4 are undeniably according to the evidence. Whether the rest of the two findings are supported depends more upon the effect to be given to the conduct of plaintiff and defendant's agent at Minneapolis when

viewed in the light of this standard provision of the policy (in the exact language of 1 Mason Minn. St. 1927, § 3417, subd. (C) 3:

"If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the insurer or by any of its duly authorized agents shall reinstate the policy, but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance."

It is clear that a mere acceptance of a premium, tendered after the lapse of a policy, *ipso facto* reinstates the same with the limited coverage named in the provision; that is, if death results from an accident happening after the lapse and before the acceptance of the payment there could be no recovery, nor could a recovery be had for any sickness unless it originates ten days after the payment is accepted. When plaintiff received the letter of the 21st of June returning the check and directing him to go to the doctor for examination, there could have been no other purpose apparent to plaintiff, in view of the provision quoted, than for the company to satisfy itself that he was not then suffering from any accidental injury or sickness for which a claim could be made if reinstated. The plain inference from the letter is that if the check was returned as negotiable—free from the pinned-on slip—it would be accepted. It was promptly returned with the doctor's certificate, and the check was deposited for collection by defendant's agent on June 24 and paid by the bank in Duluth on which it was drawn two days later. We are of the opinion that this constituted an acceptance of the premium by an agent of defendant within the meaning of the standard provision of the policy first above quoted. Therefore the receipt returned to plaintiff, annexing this condition to the acceptance, is of no force:

"Said sum is received only for transmission to the Home Office of the Society in New York for the account of the depositor, and the Society is in no way committed thereby to the acceptance thereof for the purpose offered nor to any action in the premises, and nothing herein or connected with the receipt of said sum shall be held

to waive any default in payment of any premium, interest or other sum due, or to extend the time for payment of any premium, interest or other sum, or in any manner to affect the rights of the Society under any policy or contract of insurance or otherwise. If the said amount be not accepted by the Society for the purpose offered it will be returned to the depositor upon demand."

There was nothing in the letter of June 21 suggesting to plaintiff that if the check, accompanied with the doctor's certificate, was returned as negotiable, it would be kept as a deposit on the conditions named in the receipt. Nor does the so-called application for restoration, a part of the doctor's certificate, suggest such use of the check. Its pertinent part reads:

"I hereby apply for Restoration under policy HY 30438 which if granted, is not to take effect until premiums, if any, with interest where required, have been duly paid during my good health; and I hereby agree that the following answers shall be part of this application. All of said answers are true and are offered to the Society as an inducement to grant the coverage applied for herein as well as to issue the policy applied for in any application for new insurance based on said answers and shall constitute Part II of said application."

There is no claim that any of the many answers were untrue, or that the doctor's certificate showed that plaintiff was not insurable, or that he was not then in good health.

The defendant was not bound to accept the premium deposited in the mail at Duluth on the last day of grace. Having done so for several years previously does not commit defendant to a continuance of the practice. But whether so mailing the check was a good tender we need not decide. The check mailed on the 19th of June, with the slip attached, to hold until the 27th, was not in accordance with previous practice and could not be considered a good tender. But when returned "negotiable," with the doctor's certificate, in compliance with the letter of the agent of June 21, the agent then not only accepted the check but received payment thereon, there was a reinstatement of the policy under the terms thereof. Jennings

v. Travelers Equitable Ins. Co. 173 Minn. 547, 218 N. W. 104. The conditions in the receipt for the $134.30, which the agent sent by mail, of which plaintiff had no knowledge until it reached him, cannot be considered as a proposition upon which he consented to tender the check as payment of the premium. The only conditions attached to the acceptance of the check by the letter of June 21 was that it should be negotiable and that the doctor's certificate should accompany it. Plaintiff accepted that proposition. He at once obtained the certificate of the doctor designated by defendant. With that certificate of good health and accepting the check, then negotiable, defendant should be held estopped to annex other conditions to the payment. The letter of June 21 advised plaintiff that his request to hold the check until June 27 would be considered as lapsing the policy, but if plaintiff would take the trouble to obtain a certificate of insurability from the doctor named, then the check would be accepted if negotiable. Impliedly there would be no lapsing if properly attended to. The check came back "negotiable" with the certificate of "insurability." At least, neither was questioned. That this presents facts which ought to estop defendant from claiming that there was not an acceptance of payment of the premium on June 24, when the check was deposited for collection, and paid when it reached the bank upon which it was drawn, is sustained by George Washington L. Ins. Co. v. Norcross, 178 Ky. 383, 198 S. W. 1156. With reasonable promptness plaintiff began this action after receiving notice of defendant's refusal to consider the payment made as an acceptance of the premium due and payable May 19, 1933. Under the strict terms of the policy, there should have been paid on June 19 interest at five per cent upon the $134.30. But defendant's agent frankly admitted that it was not the practice to charge interest during the grace period. And for the three or four days' additional grace here involved the amount is so insignificant that neither court nor counsel make any point thereof.

Defendant cites in support of the findings attacked Equitable L. Assur. Soc. v. Pettid, 40 Ariz. 239, 11 P. (2d) 833; Mutual L. Ins. Co. v. Hynson, 171 Ark. 218, 283 S. W. 357; Brown v. Peoples Ind.

L. Ins. Co. 16 La. App. 10, 132 So. 241; Hoyle v. Grange L. Assur. Assn. 214 Mich. 603, 183 N. W. 50; Nelson v. Mutual L. Ins. Co. 58 Mont. 153, 190 P. 927, 928; New York L. Ins. Co. v. Feicht (D. C.) 29 F. (2d) 318; Exchange Trust Co. v. Capitol L. Ins. Co. 40 F. (2d) 687. None of these cases are for reinstatement, but all for recovery of the loss covered by the insurer's policy. If all the facts involved in the decision of the Arizona court are considered, the law there announced does not show that in the case at bar defendant's policy had lapsed. So also in the Arkansas decision, there were so many factors differing from those here involved that it affords little aid. There was no provision in that policy similar to the one quoted first above from the policy in the instant case, making acceptance of the premium a reinstatement of the policy. The Louisiana case presents a policy differing widely from plaintiff's herein. The Michigan decision turned upon the fact whether or not the premium was accepted conditionally. The jury found there was no condition attached. In the Montana case the policy contained a provision for reinstatement within three years [58 Mont. 159] "upon evidence of insurability satisfactory to the company." In the federal case first mentioned [29 F. (2d) 318] the policy provided for reinstatement within five years from default, upon written application by the insured and upon presentation at the home office of "evidence of insurability satisfactory to the company." The last cited case in the federal court involved a policy of like language regarding reinstatement, and the court held that the negotiations for reinstatement were in progress when the insured died; hence the decision went in favor of the company.

We think the facts require a finding that when, in response to the letter of defendant's agent of June 21, plaintiff remitted the check "negotiable" with the doctor's certificate showing insurability, there was a reinstatement, and that defendant is estopped from claiming the contrary; therefore the findings mentioned to the contrary are not sustained. There is no claim of lack of authority of defendant's agent at Minneapolis to accept payment of premiums or to do what he did.

The order is reversed.