## LORRAINE VORLICKY v. METROPOLITAN LIFE INSURANCE COMPANY.[1]

July 21, 1939.

No. 32,083.

[1]Reported in 287 N. W. 109.

*Snyder, Gale & Richards,* for appellant.
*George B. Mead* and *M. J. Timmons,* for respondent.

PETERSON, JUSTICE.

Plaintiff sues as the beneficiary named in a life insurance policy issued by defendant to Sylvester F. Forst on November 1, 1935. She was the wife of the insured. The policy was in the amount $1,000 with double indemnity in case of accidental death. The premium was $1.75 per month payable on the first day of each month. A grace period of 31 days was granted for the payment of every premium after the first, during which the policy was to remain in force.

The insured came to his death solely by accidental means on April 28, 1936. Due proof of his death and claim under the policy was made by plaintiff.

The question is whether or not the policy was in force at the time of the insured's death. Defendant claims that the policy

lapsed and ceased to be in force on April 1, 1936, by reason of the nonpayment of the premium due on March 1. Plaintiff claims that the premium was either paid in full or in part with a waiver by defendant of prompt payment of the balance. A somewhat detailed statement of the evidence is necessary to understand the basis of the respective claims.

The evidence shows without dispute that the first premium and the monthly premiums due on December 1, 1935, January 1, 1936, and February 1, 1936, were paid.

The premiums were collected by the local agent at New Ulm, who wrote the policy. He was required to enter receipt of premiums, when he collected them, in a premium receipt book furnished to the insured. This he failed to do. He had a cash collection book of his own in which he made his own entries of premiums collected. He collected premiums by calling at the homes of the insured beginning on the due date and continuing during the grace period. He testified that it was the uniform practice if a premium was not paid by the last week of the grace period to send a lapse notice to the company. If the premium was not subsequently collected before the expiration of the grace period, the policy was then automatically lapsed for nonpayment of the premium. If, however, the premium was collected within the grace period after the lapse notice was sent in, the agent then sent in a stop-lapse, which in effect countermanded the lapse notice previously given. In that situation the agent made an entry "Rev." which was used to designate both revivals and reinstatements.

If the March premium had not been collected prior to the last week in March the local agent would then have sent in a lapse notice. If the premium had been paid during the last week of March after he sent in the lapse notice he would have notified the company by sending in a stop-lapse. If a stop-lapse was sent in the policy would have been entered "Rev." on the agent's records showing that it was still in force, and the lapse had not become effective.

The local agent testified that he did not receive the March premium or any part thereof during the month of March. Plaintiff

testified that she saw her husband pay the agent some money when he came to collect the premium on March 12 (her husband's birthday), but she was unable to say how much money was paid. Then one dollar was paid on April 1. There is some dispute whether the date was April 1 or April 2, but the evidence sustains a finding that the date was April 1. The agent entered the one dollar collected "Rev." No claim is made that the April premium was paid. On April 4 the regional office at Minneapolis, under which the local agent worked, reported the policy to the home office in New York as lapsed. The home office entered the policy as lapsed on May 1, 1936, three days after the insured died.

The lapse notice, if one had been sent in, the daily reports of the local agent required by the company, a letter written by the local agent to the company immediately after the insured's death concerning plaintiff's claim as beneficiary, and other records, if in existence at the time of the trial, might have thrown much light on the claims of the parties. These plaintiff demanded to be produced. Some of the records were produced, others were not. Plaintiff made claim through an attorney sometime in April and commenced suit on May 6, 1938. Defendant did not produce (1) the lapse notice claimed to have been sent in by the local agent during the last week of March, which the testimony showed had been sent to the home office and no effort had been made to obtain it; (2) the letter written by the agent to the company after the insured's death relative to plaintiff's claim under the policy, which the defendant's own witness stated was sent to the home office and no inquiry at the home office was made even concerning it; and (3) the local agent's cash collection book, which he testified was at his home in New Ulm.

The nonproduction of records was excused by the claim that both the home office and the regional office at Minneapolis destroyed all correspondence, reports, and similar records at the end of two years. In spite of this claim, defendant produced in its own behalf the local agent's daily report April 2, 1936, and the Minneapolis regional office report to the home office of lapsed policies, dated April 4, 1936, both more than two years prior to the demand.

Furthermore, in contradiction of the local agent's testimony that policies lapsed at the end of the grace period during which the lapse notice was sent into the company, the manager of the regional office explained that the lapse entry made at the home office on May 1 was to show a lapse as of April 1.

Defendant sought to prevent lapses of policies on the theory that a lapse was a loss of business. The local agent testified that 70 per cent of lapsed policies were revived by persistent solicitation of the insured. In the instant case he had a personal interest to keep the policy in force to avoid a loss of commissions received for writing the policy. Plaintiff testified that although she saw the local agent during March and April and he knew that she was interested in keeping the insurance in force he never once mentioned any alleged nonpayment of premium. She says that he first claimed that the premium was not paid on the day following the insured's death and that he then offered to return to her the one dollar collected on April 1. At the same time he obtained from plaintiff the premium receipt book in which no premium payments had been entered, which he took away with him and in which he made pencil entries to show the premium payments, which now are not in dispute.

On the claim of waiver defendant offered evidence to show that the local agent did not have authority to revive or reinstate a policy after lapse. The policy itself contained a notice to the policyholder to that effect, and upon this defendant relied. The claim was that only the home office could revive or reinstate a lapsed policy.

One of defendant's own exhibits, however, showed that in the case of a lapsed policy of $2,000 or less, such as we have here, the local agent had authority to reinstate such a policy if (1) the premium was less than seven months in arrears, and (2) there was no question of the insurability of the insured and certain other conditions not important here. The agent also had authority to enter the fact of such premium payments in the premium receipt book of the policyholder so as to show the reinstatement of the policy. That being true, the acceptance of the one dollar on April 2, if the date

be as contended by defendant, would have reinstated the policy if 75 cents had been paid on March 12. There was some evidence to justify such an inference. The other facts supporting the claims of the parties need not be stated. The issues of payment and waiver were submitted to the jury under appropriate instructions, which returned a verdict for $2,306, the amount due for accidental death, with interest. Defendant contends that the evidence does not support an affirmative finding on either issue but, on the contrary, conclusively shows that the insurance at the time of the insured's death had lapsed for nonpayment of premiums.

■ Where a verdict is assailed on appeal, the evidence will be viewed most favorably to the prevailing party. The verdict will be sustained if it is possible to do so on any reasonable theory of the evidence. Citrowski v. Libert, 194 Minn. 269, 260 N. W. 297; Walsh v. Dahl, 195 Minn. 36, 261 N. W. 476. The conflicting evidence made payment of some amount on March 12 a fact question for the jury. Salvaggio v. Metropolitan L. Ins. Co. 80 Pa. Sup. 594. We might assume for purposes of decision that evidence that some money was paid without specifying the amount does not show payment of a particular amount due. See Magenau & Co. v. Bell, 14 Neb. 7, 14 N. W. 664. But evidence that some money was paid to the agent on March 12 and the payment of the one dollar on April 1, when considered with the evidence relating to the lapsing of policies, permits an inference that the former was a part and the latter the balance of the premium due on March 1. If that were true, the premium was paid in full during the grace period. According to the local agent's version, if that premium had not been so paid, there would have been a lapse notice sent in during the last week of March. Then, if the premium had been paid in full on or before April 1, he would have sent in the stop-lapse. The entry on his record would have been "Rev." to show the stop-lapse. This was the record he made when he collected the one dollar on April 1. The local agent testified that partial payments on premiums were carried as open items. If so, he carried the partial payment of March 12 as an open item until he collected the balance of one dollar on April 1. If the March premium was paid the policy would not

have lapsed on April 1 and could lapse by failure to pay a subsequent premium, in this case the premium due on April 1. Since no payment was made on account of the April premium, the policy would then have lapsed on May 1. That was the date on which the company lapsed the policy at the home office. The evidence permits the view that defendant's records and conduct are explainable only on the assumption that the March premium was paid.

The rule that evidence inconsistent with the continued existence of a debt is evidence of payment, see 48 C. J. p. 689, § 191, applies here. The jury were justified in believing that the failure of the local agent during March and April to mention nonpayment of the premium to plaintiff until after the insured's death and all the other facts mentioned could not all be true unless the March premium had in fact been paid.

We have not overlooked the testimony of the regional agent interpreting the record to show a lapse as of April 1 although the record itself showed the lapse as of May 1. His testimony was not conclusive, and its weight was for the jury. It conflicted with the testimony of the local agent. Although he claimed that all reports and correspondence were destroyed at the end of two years, it is doubtful whether such records would be destroyed where, as here, a claim was being made within such time with respect to which the records might be material. Furthermore, he produced some records kept more than two years. Not only was the jury justified in believing that his explanations were not true, but also that he produced only part of defendant's records, which it had been notified to produce. Where relevant evidence is within the control of a party whose interest it would be to produce it and he fails to produce it without a satisfactory explanation, the jury may infer that the evidence if produced would have been unfavorable to such a party. Fonda v. St. Paul City Ry. Co. 71 Minn. 438, 74 N. W. 166, 70 A. S. R. 341; 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3444; 20 Am. Jur., Evidence, § 183.

The evidence justifies a finding that the March premium was paid.

■ Receipt of the one dollar on April 2 as the balance due on the March premium would have been within the local agent's

authority because of instructions given to him by the company, notwithstanding the notice of the lack of such authority given on the policy. The acceptance of the money by the insurer, if tendered as the balance of the premium due, with the knowledge here shown of the alleged lapse, was a waiver thereof. 3 Dunnell, Minn. Dig. (2 ed.) § 4684, note 95. In that view it was not important whether the payment was made on April 1 or April 2.

■ If the one dollar was paid in April after the policy had lapsed, defendant received it with full knowledge of the alleged lapse and that it was paid to keep the policy in force. Defendant's records show that it did not lapse the policy, but kept it in force, until May 1. A finding of waiver of payment of the premium in full at that time was warranted. Garber v. Equitable L. Assur. Soc. 193 Minn. 18, 257 N. W. 506; Toles v. Equitable L. Assur. Soc. 163 Minn. 203, 203 N. W. 619; Mee v. Bankers' L. Assn. 69 Minn. 210, 72 N. W. 74.

The evidence justified an affirmative finding on either the issue of payment or waiver, with the result that the verdict in favor of plaintiff must be sustained.

Affirmed.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.

